Catherine McGrath
THELEN REID BROWN RAYSMAN & STEINER LLP
875 Third Avenue
New York, New York 10022
(212) 603-2000
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| 1.  AXA, a Société Anonyme organized under Laws of France; | ) ) | |
| 2.  AXA INVESTMENT MANAGERS, INC., a Delaware Corporation, | ) ) | |
| 3.  AXA EQUITABLE LIFE INSURANCE COMPANY, a New York Stock Life Insurance Corporation; | ) ) ) | |
| 4.  AXA ADVISORS, L.L.C., a Delaware Limited Liability Company; | ) ) | |
| 5.  AXA NETWORK, L.L.C., a Delaware Limited Liability Company; | ) ) | |
| 6.  AXA FINANCIAL INC., a Delaware Corporation; and | ) ) | |
| 7.  AXA PRIVATE EQUITY US, LLC, a Delaware Limited Liability Company; | ) ) | Civil Action No.  07 CV 8293(WHP)(DCF) |
| Plaintiffs | ) | |
| v. | ) | **COMPLAINT** |
| 1.  AXIA INVESTMENT MANAGEMENT, INC. an Oklahoma corporation; | ) ) | DEMAND FOR |
| 2.  BOK FINANCIAL CORPORATION an Oklahoma Corporation; | ) ) | JURY TRIAL |
| 3.  AMERICAN PERFORMANCE FUNDS, a Massachusetts Business Trust; and | ) ) | |

4.    BANK OF OKLAHOMA, a National            )
Association, Chartered by the                )
U.S. Government,                             )
                        Defendants.           )
_____)

AXA, a French company, and its U.S. subsidiaries, AXA Investment Managers, Inc., AXA Equitable Life Insurance Company, AXA Advisors, L.L.C., AXA Network, L.L.C., AXA Financial, Inc., and AXA Private Equity US, L.L.C. (hereinafter collectively referred to as the "AXA Companies"), allege as follows:

<u>NATURE OF THE ACTION</u>

1.  This is an action for trademark infringement in violation of § 32 of the Lanham Act (15 U.S.C. § 1114); for false designation of origin and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for trademark dilution in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); for cybersquatting in violation of § 43(d) of the Lanham Act,15 U.S.C. § 1125(d); for common law trademark infringement and unfair competition; and for related causes of action under the laws of the State of New York, including trademark infringement under New York Arts and Cultural Affairs Law § 33.09, and deceptive trade practices in violation of the laws of the State of New York, including New York General Business Law §§ 133, 349 and 350a and trademark dilution under New York General Business Law § 360-l.  Plaintiff seeks injunctive relief, an order to cancel/transfer domain names, an accounting of defendant's profits, damages, to be trebled, punitive damages, and its costs and attorneys' fees.

<u>THE PARTIES</u>

2.  Plaintiff AXA is a Société Anonyme, or "S.A.", i.e., a French limited liability company, with a principal place of business at 21 avenue Matignon, 75008 Paris, France. AXA S.A. is the parent company to an international group of insurance and financial services companies including the remaining Plaintiffs herein, and through these and other related companies, advertises insurance and financial services to customers in, and

regularly does business in, the jurisdiction of the Court.

3.    Plaintiff AXA Investment Managers, Inc. is a corporation organized under the laws of the State of Delaware, with a principal place of business at One Fawcett Place, Greenwich, Connecticut 06830.  AXA Investment Managers, Inc. is registered to do business in New York and provides financial services to customers and otherwise regularly does business in the jurisdiction of the Court.

4.    Plaintiff AXA Equitable Life Insurance Company is stock life insurance corporation organized under the laws of the State of New York, is authorized to do business in New York, and has a principal place of business at 1290 Avenue of the Americas, New York, New York 10104.  AXA Equitable Life Insurance Company provides insurance services to customers and otherwise regularly does business in the jurisdiction of the Court.

5.    Plaintiff AXA Advisors, L.L.C. is a limited liability company organized under the laws of the State of Delaware, and is registered to do business in New York, with a principal place of business at 1290 Avenue of the Americas, New York, New York, 10104. AXA Advisors, L.L.C. provides financial services to customers and otherwise regularly does business in the jurisdiction of the Court.

6.    Plaintiff AXA Network, L.L.C. is a limited liability company organized under the laws of the State of Delaware, is registered to do business in New York, and has a principal place of business at 4251 Crums Mill Road, Harrisburg, Pennsylvania 17112. AXA Network, L.L.C. provides financial services to customers and otherwise regularly does business in the jurisdiction of the Court.

7.    Plaintiff AXA Financial, Inc. is a corporation organized under the laws of the State of Delaware, is registered to do business in New York, and has a principal place of business at 1290 Avenue of the Americas, New York, New York, 10104.  AXA Financial, Inc. provides financial services to customers and otherwise regularly does business in the jurisdiction of the Court.

8.    Plaintiff AXA Private Equity U.S. L.L.C., is a limited liability company organized under the laws of the State of Delaware, is registered to do business in New York, and has a principal place of business at 1370 Avenue of the Americas, New York, New York 10019. AXA Private Equity US, L.L.C. provides financial services to customers and otherwise

regularly does business in the jurisdiction of the Court.

9.    Defendant AXIA Investment Management, Inc. is a corporation organized under the laws of the State of Oklahoma, has a principal place of business at One Williams Center, 15th Floor, Tulsa, Oklahoma 74172, offers financial services, including equity, fixed-income and cash management strategies to taxable and tax exempt institutional and individual clients throughout the United States and, on information and belief, engages in business in the jurisdiction of the Court.   AXIA Investment Management, Inc. is a subsidiary of Defendant Bank of Oklahoma, N.A.

10.    Defendant BOK Financial Corporation is a corporation organized under the laws of the State of Oklahoma, has a principal place of business at Bank of Oklahoma Tower, PO Box 2300, Tulsa, Oklahoma, 74192, offers financial services, including equity, fixed-income and cash management strategies to taxable and tax exempt institutional and individual clients throughout the United States and, on information and belief, engages in business in the jurisdiction of the Court.

11.    Defendant American Performance Funds is a business trust organized under the laws of the Commonwealth of Massachusetts, has a principal place of business at 3435 Stelzer Road, Columbus, Ohio 43219, offers financial services, including mutual funds throughout the United States, and, on information and belief, engages in business in the jurisdiction of the Court.   The mutual funds of Defendant American Performance Funds are managed by Defendant AXIA Investment Management, Inc.

12.    Defendant Bank of Oklahoma, N.A., is a National Association charted by the U.S. Government for banking purposes, has a principal place of business at Bank of Oklahoma Tower, One Williams Center, Tulsa, Oklahoma 74172, offers financial services, including banking services like auto and home loans, and, on information and belief, engages in business in the jurisdiction of the court.  Defendant Bank of Oklahoma, N.A. is a subsidiary of Defendant BOK Financial Corporation.

## JURISDICTION AND VENUE

13.  This Court has jurisdiction over the subject matter of this action under 15 U.S.C. §§ 1116, 1121 and under 28 U.S.C. §§ 1331, 1337 and 1338(a).  This Court has jurisdiction over the state law claims under 28 U.S.C. §§ 1338(b) and 1367(a) and

principles of supplemental and pendent jurisdiction.  Jurisdiction also resides under 28 U.S.C. § 1332 (diversity of citizenship).  The amount in question herein exceeds $75,000.

14.  All Defendants are subject to personal jurisdiction in this District, on information and belief, by reason of their transaction of business in the State of New York.

15.  Venue is proper in this District under 28 U.S.C. § 1391(b) and (c).  On information and belief, Defendants are doing business in this District, have substantial contacts with this District, are subject to personal jurisdiction, and a substantial portion of the events giving rise to the claims asserted herein have occurred in this District.

### ALLEGATIONS COMMON TO ALL COUNTS

16.  AXA S.A. the French parent, is a global financial services company with about 190,000 employees and about 52 million clients.  The company ranks in *Fortune Magazine's "Global 500"* as the 15th largest corporation in the world based on its revenues of almost $130 billion dollars.  AXA engages in life, health and other forms of insurance, and investment management.  Its main operations are in Western Europe, North America and the Asian Pacific region.

17.  Originally named Ancienne Mutuelle, the company renamed itself Mutuelles Unies in 1978, and the present name AXA was adopted in 1985.

18.  The AXA Companies offer, in the U.S., a variety of traditional, variable and interest-sensitive life insurance products, variable and fixed-interest annuity products, mutual funds and other investment products and asset management, financial planning and other financial services principally to individuals, small and medium-size businesses and professional and trade associations.   For example, the financial products and services of the AXA Companies are offered in all 50 states on a retail level by independent contractor agents, and through national and regional securities firms, independent financial planners and other broker-dealers, banks and brokerage general agencies.

19.  Currently, the AXA Companies have a number of mutual funds under their control/management that are offered to the public throughout the country and which have total assets of several billions of dollars.

20.  The AXA Companies have about 6000 U.S. employees, and a separate sales force consisting of about 6000 financial professionals.

21.  In the U.S., AXA S.A. and/or its subsidiaries have, since at least about 1987, used the mark "AXA" alone and in combination with other terms in the marketing of insurance and other financial services to individuals and institutional investors to represent the very high quality of the services offered, and to distinguish these services from those of others.  These marks appear on television commercials, letterhead, magazine advertisements, business cards, signage, brochures, websites, domain names, etc. Examples of descriptions of the AXA Companies, and an advertisement for the services offered by the AXA Companies and using at least the mark "AXA" is attached as Exhibit A.

22.  More particularly, at least the following marks have been used and are being used by the AXA Companies in such a way that a "family" of marks has been established for its brand to promote and advertise, and generate goodwill for the AXA Companies in the U.S.:

AXA (alone in block letters, or stylized or in logo formats)

AXA INVESTMENT MANAGERS

AXA IM

AXA FINANCIAL

AXA FINANCIAL PROTECTION

AXA ADVISORS

AXA NETWORK

AXA PRIVATE EQUITY

AXA EQUITABLE

AXA DISTRIBUTORS

AXA ENTERPRISE

AXA FOUNDATION

AXA ASSISTANCE

AXA CORPORATE SOLUTIONS

AXA ACHIEVEMENT

AXA ART

Also, various of these marks have been incorporated in domain names and can themselves serve as marks, such as www.axa.com, www.axaonline.com, www.axa-im.com and www.axa-financial.com. The colors consistently used with many of these marks are blue alone, or a combination of blue, white and red.  These marks are referred to herein as the "AXA Marks".  AXA, S.A. is the owner of the "AXA Marks".

23.  AXA, is the owner of record at the U.S. Patent and Trademark Office of at least the following U.S. Service Mark Registrations including the mark "AXA", many of which correspond to the AXA Marks and have obtained "incontestable" status under Section 15 of the Lanham Act (15 U.S.C. Section 1065):

2,337,424 for AXA INVESTMENT MANAGERS

1,679,597 for AXA

2,072,157 for AXA

2,416,704 for AXA

2,118,193 for AXA

2,693,952 for AXA

2,522,000 for AXA FINANCIAL

2,546,263 for AXA ADVISORS

2,546,262 for AXA ADVISORS

2,691,402 for AXA NETWORK

2,837,673 for AXA PRIVATE EQUITY

2,942,802 for AXA PRIVATE EQUITY

2,511,513 for AXA ASSISTANCE

2,871,993 for AXA CORPORATE SOLUTIONS

2,987,693 for AXA ART

Copies of these U.S. Registrations are attached as Exhibit B.

24.   The  AXA Companies have been featured in magazine and newspaper articles for a number of years, and the AXA Companies' representatives have spoken at many financial industry functions, and have promoted charity events, here in the U.S., all resulting in significant goodwill for the AXA Companies.

25.   Through extensive, longtime, exclusive and continuous interstate use, and the above-noted registrations, the AXA Marks represent a "family" of marks, each including the distinctive mark "AXA".

26.   Through extensive, longtime, exclusive and continuous interstate use, and the above-noted registrations, the AXA Marks are famous and distinctive marks.

27.   Thus, for about twenty years at least the mark "AXA" has been used continuously and exclusively, and respected by its relevant industry competitors, to signal to prospective and actual customers that a single source was responsible for the high quality financial services, including mutual funds.  A simple, free Internet search at the time Defendant BOK adopted "AXIA" would have confirmed for any member of the public that the AXA Companies were using the AXA Marks extensively in interstate commerce and that most were the subject of longstanding federal registrations.

28.   Apparently, sometime prior to mid-2006, a decision was made by Defendant BOK to change the name of its existing subsidiary "BOK Investment Advisers, Inc."  to

"AXIA".  The reason the word "AXIA" was chosen as the new name appears to be that "the AXIA brand could give BOK a chance to reach customers seeking an investment firm with <u>all the appearances of a Wall Street pedigree</u>."  (Emphasis Supplied).  M. Jake Dollarhide, chief executive of Longbow Asset Management Co., of Tulsa, Oklahoma, as reported in the *The Journal Record*, Oklahoma City, June 22, 2006 (attached as Exhibit B-1).  The AXA Companies have had such a Wall Street pedigree for years.

29.  To further give the impression that the <u>new</u> "AXIA Investment Management, Inc." was actually a well established company with a tradition of trusted service in the financial area, the company promoted itself on its website as follows:  "AXIA has a <u>long history</u> of employing consistent and well-defined investment philosophies and processes that exploit market inefficiencies, providing us the opportunity to 'deliver value' to our taxable and tax-exempt clients."  (Emphasis Supplied).  AXIA Investment Management Inc. could not have had a "long tradition", as it was just starting.  Similarly, on Defendant American Performance Funds' website, the biography of Mr. J. Brian Hendersen, President of AXIA Investment Management, Inc., the company that manages the Defendant American Performance Funds family of mutual funds, indicates that he "<u>established AXIA's</u> fixed income <u>philosophy and process in 1993</u> as the firm's Director of Fixed Income Strategy…".  (Emphasis Supplied).  Further it is stated, "<u>Since 1993</u>, Mr. Henderson has been <u>portfolio manager at AXIA</u> Investment Management, Inc."  (Emphasis Supplied).  Other Portfolio managers are similarly touted as being with AXIA Investment Management, Inc., from 2000-2005.  However, AXIA Investment Management, Inc. did not exist until 2006.   Such deceptive statements concerning a long, trusted tradition in the financial field would only be made by a newly-formed company as an attempt to lead the public into thinking it is another, established company.

30.  In light of the intent of becoming a player on Wall Street, Defendant's espousing an untrue history of experience under the AXIA name, and adopting and promoting a mark and domain name strikingly similar to a group of related well-known Wall Street firms, i.e., the AXA Companies, in the very same and/or similar field of endeavor, were calculated by the Defendants to lead the consuming public into thinking it was dealing with the long-established and well-known AXA Companies.

31.  AXA, S.A. learned of an application for federal registration of the mark "AXIA

Investment Management" (plus logo), U.S. Serial No. 78/876,667, pending at the U.S. Patent and Trademark Office.  The application claimed the mark was to be used with "Banking services, investment services, namely asset acquisition, consultation, development and management services and consumer lending services,"  goods which are identical to or very similar to those offered by the AXA Companies, as noted above. The application for registration was filed in the name of  Defendant "BOK Financial Corporation" (hereinafter "BOK").

32.  AXA then also learned of the interstate use of the marks "AXIA" (word only), "AXIA Investment Management" (words only) and "AXIA Investment Management" (plus logo), hereinafter the "AXIA" marks, for these same and/or similar services, on websites of several of the Defendants.  An example of use of the AXIA marks is included as Exhibit C, which is taken from the "Statement of Use" filed April 17, 2007 by the Applicant BOK with the U.S. Patent and Trademark Office to prove that the mark had been used in interstate commerce.  Defendant BOK also registered and Defendant AXIA Investment Management Inc. uses the website www.axiaim.com, and Defendant AXIA Investment Management, Inc. uses a telephone number "800-958-AXIA", each of which prominently uses the term "axia" in promoting their services.  Defendant American Performance Funds also uses the AXIA Marks on its website accessible in the jurisdiction to promote the sale of mutual funds.

33.  On July 18, 2007, AXA's U.S. trademark counsel, William Herbert, forwarded a letter to BOK Financial Corporation's attorney handling the pending application for registration, Ms. Penina Michlin Chiu.  A copy of the July 18, 2007 letter is attached as Exhibit D.  The letter advised that the use of the AXIA marks was likely to confuse customers due to the similarity of the respective marks and services, and that the AXA Marks would be diluted.  The letter requested a written response by August 2, 2007.

34.  Immediately before the response date, i.e., on July 31, 2007, Defendants AXIA Investment Management, Inc. and BOK Financial Corporation, filed a declaratory judgment action in the Northern District of Oklahoma naming each of the following Plaintiffs herein: AXA (French parent), AXA Investment Managers, Inc., AXA Advisors, L.L.C., AXA Network, L.L.C., AXA Financial, Inc., and AXA Private Equity US, L.L.C., and basically seeking a declaration that the concurrent use of AXIA and AXA for the same or similar services, by different companies, is not an infringement or dilutive.  A Motion to Dismiss

the Oklahoma action is being filed by the AXA entities noted immediately above, so that the present, more appropriate action can proceed.

## COUNT I

Infringement of Federal Registrations

(15 U.S.C. § 1114)

35.  Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs above.

36.  Plaintiff, AXA, S.A., is the owner of the federal service mark registrations included in paragraph 23 above.  These registrations are now valid, subsisting, uncancelled, and unrevoked.

37.  Either inherently, due to the term "AXA" being "arbitrary" as applied to financial services, or through the extensive advertising, sales, media coverage, etc., enjoyed by the AXA Marks, same are distinctive and strong marks.

38.  Plaintiffs herein have never authorized or acquiesced in Defendants' use of the AXIA Marks.

39.  Continuously since at least about 1987, at least one of the Plaintiffs, or a predecessor-in-interest, has used interstate the mark "AXA" which is the subject of U.S. Registration No. 2,072,157, in connection with and to identity financial products and services and to distinguish said products and services from similar products and services offered by other companies, by, and without limitation, prominently using the mark AXA on advertising distributed throughout the United States, including particularly in the State of New York.

40.  The additional registrations included in paragraph 23 above began interstate use at various times after at least about 1987.  Use of the marks covered by these additional registrations has been made by at least one of the Plaintiffs herein, or a predecessor-in-interest, and has been continuous since its respective first date of interstate use to identity financial products and services and to distinguish said products and services from similar products and services offered by other companies, by, and without limitation, prominently using the respective marks on advertising distributed throughout the United States, including particularly in the State of New York.

41.  Defendants have infringed Plaintiffs' marks in interstate commerce by various acts, including, without limitation, using the AXIA Marks in selling, offering for sale, promotion and advertising of financial services, including mutual funds, which services are of a type identical and/or very similar to the type offered by Plaintiffs, and by directing such acts by other Defendants, thereby contributing to the infringement by other Defendants.

42.  Defendants' use of the AXIA Marks in connection with financial services is without permission or authority of the Plaintiffs and said use is likely to cause confusion, to cause mistake and/or to deceive.

43.  Defendants' use of the AXIA Marks in connection with financial services, including mutual funds, has been made notwithstanding Plaintiffs' well-known and prior established rights in the registered marks.  Defendants had at least constructive notice of Plaintiffs' federal registrations under 15 U.S.C. § 1072 and likely actual knowledge.

44.  Upon information and belief, Defendants' infringing activities have been willful and deliberate, have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Plaintiffs' businesses, reputations and goodwill in the many federally registered marks discussed above.  Plaintiffs have no adequate remedy at law.


COUNT II

Federal False Designation of Origin and Unfair Competition
(15 U.S.C. § 1125(a))


45.  Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs above.

46.  Either inherently or through the extensive advertising, sales, media coverage, etc., enjoyed by the AXA Marks, same are distinctive and strong marks.

47.  Plaintiffs herein have never authorized or acquiesced in Defendants' use of the AXIA Marks.

48.  Due to the strong similarity of the AXA Marks and the AXIA Marks, differing in only one interior letter which may not even be pronounced, and the identical or very closely related nature of the services with which these marks are used, respectively,  present and

prospective customers will be confused as to the source of the respective services.  For example, in the financial field, as in many other fields, word-of-mouth advertising is very important.  People also rely on friends, relatives, etc. in seeking guidance for investments.  With the two words "axa" and "axia" so similar phonetically, and not being common English language words or having any well-known meaning, there is a very high likelihood that someone obtaining verbal advice to invest with "AXA" may not fully understand the pronunciation, and when searching the internet for the company comes across the AXIA Investment Management, Inc. website, offering the same services as the AXA Companies, will be confused and make an unintended investment, i.e., contrary to the recommendation made by his/her friend/relative.  Thus, consumers are in danger of risking their financial futures on the possible misinterpretation of a several letter unusual word.

49.  To reinforce the unauthorized association between the Defendants and Plaintiffs, Defendants use a color blue for the word "AXIA" that is similar to the blue used by Plaintiffs for the mark "AXA".  Also, at least in the logo version of the mark "AXIA Investment Management, Inc." a color scheme of blue, white and orange is used, which is evocative of the color scheme that has often been used with logo version of the mark "AXA", i.e., blue, white and red.  Moreover, in some instances where the AXIA Marks are used in stylized font, the font has characteristics similar to those of some of the AXA Marks that are in a stylized font (e.g., the legs and cross members of the "A" have similarly differing thicknesses, and the legs of the "X" have differing thicknesses (compare, e.g., Exhibit C with Registration No. 2,072,157 of Exhibit B).  Regardless of the color scheme and/or font, prospective customers often are faced with comparing only the core marks, i.e., "AXIA" and "AXA" in black block letters in advertising copy.

50.  Defendants' unauthorized use of the AXIA Marks in a domain name, on websites, in a phone number, and in other advertising confuses customers due to their similarity to the AXA Marks, thereby causing customers to purchase services offered by Defendants' thinking they are those of Plaintiffs.  Accordingly, sales by Defendants, on information and belief, have been or will be diverted from the AXA Companies.

51.  Unless Defendants are stopped from infringing the AXA Marks, the public will continue to be confused as to the source of services sold under the AXIA Marks, and

Defendants' actions will continue to cause economic injury to the AXA Companies and the goodwill associated with the AXA Marks.

52.     By so imitating and infringing the AXA Marks by the interstate use of the AXIA marks with financial services, and by the Defendants cooperating in these acts by delegating the use of an infringing domain name and causing the Defendant American Performance Funds to use the AXIA Marks in advertising, Defendants have created directly, or contributorily, a false designation of origin, a false or misleading description and misrepresentation of fact which is likely to cause confusion and to cause mistake, and to deceive as to the affiliation, connection or association of the Defendants with Plaintiffs as to the origin, sponsorship, or approval of Defendants services and the commercial activities of Plaintiffs, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

53.     Upon information and belief, Defendants' foregoing acts have been, and continue to be, willful and deliberate.

54.     The AXA Companies have been and are being irreparably damaged by Defendants' violation of Section 43(a) of the Lanham Act, and have no adequate remedy at law.  Unless restrained by this Court, Defendants' violation will continue to cause irreparable injury to the AXA Companies and to the public.

<u>COUNT III</u>

Federal Trademark Dilution
(15 U.S.C. § 1125(c))

55.  Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs above.

56.  Through extensive advertising, sales, media coverage, etc., the AXA Marks are famous and distinctive, and became famous prior to Defendants' first unauthorized use of the AXIA Marks.

57.  In light of the very close similarity of the AXA Marks and the AXIA Marks, and the identical or very closely related nature of the services with which these marks are used, respectively, actual dilution by blurring is occurring when the AXIA Marks are being used

with Defendants' services.  Even if actual dilution is not occurring, dilution by blurring is clearly likely to happen, due to the fame of the AXA Marks.

58.  In addition, in the financial services area, where people are investing large sums of money, the ability to control the high quality of the services is imperative, and the value of famous marks associated with such high quality services cannot be allowed to be diluted by being indiscriminately applied by others to goods/services over which the famous mark owner has no control, which can lead to dilution by tarnishment .  For example, if the Defendant American Performance Funds mutual funds sold using the AXIA Marks should be poorly managed, such reputation could tarnish the reputation of the famous AXA Marks.

59.  Defendants' unfettered use of marks similar to the AXA Marks may have no end.  Unless Defendants are stopped, Defendants may apply the AXIA Marks to other products or services, the quality of which would not be under the control of the AXA Companies.

60.  The foregoing acts of Defendants constitute use of marks in commerce that are likely to case, have caused and will continue to cause dilution, either by blurring or tarnishment, of the distinctive quality of the AXA Marks.

61.  Continued use by Defendants of marks very similar to the AXA Marks will result in a lack of designation and indication of origin, and a loss of distinctiveness and exclusivity of the famous AXA Marks and violates Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

62.  Upon information and belief, Defendants' foregoing acts have been, and continue to be, willful and deliberate.

63.  The AXA Companies have been and are being irreparably damaged by Defendants' violation of Section 43(c) of the Lanham Act, and have no adequate remedy at law.  Unless restrained by this Court, Defendants' violation will continue to cause injury to the AXA Companies and to the public.

<u>COUNT IV</u>

Violation of the Anticybersquatting Consumer Protection Act
(15 U.S.C. § 1125(d))

64.  Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs above.

65.  Defendant BOK has registered the domain name www.axiaim.com and, on information and belief, directs its subsidiary, the Defendant AXIA Investment Management, Inc., to use same to allow public access to the AXIA Investment Management, Inc. website, which prominently uses the AXIA Marks.

66.  By registering and using this infringing domain name, Defendants BOK and AXIA Investment Management, Inc., have in bad faith registered, trafficked in and/or used a domain name that is confusingly similar to and/or dilutes the AXA Marks.

67.  The registration of the domain name www.axiaim.com, the continued use of the mark "AXIA" in this domain name and the use of the AXIA Marks on the website, are in bad faith since Defendants' BOK and AXIA Investment Management, Inc. had to have been aware of the AXA Marks at the time of registration of the domain name and had to have been trying to benefit from the goodwill associated with the AXA Marks.

68.  Also, actual or prospective customers looking for the AXA website, should they misspell it by inserting an "i" between the "x" and the second "a", will arrive at the AXIA Investment Management, Inc. website which uses the confusingly similar term AXIA therein, leading the customer to believe that it had landed at an AXA site.  Registering and using such a close domain name also amounts to bad faith "typosquatting."

69.  Regardless of how the customers arrive at the site, the fact that the website of Defendant AXIA Investment Management, Inc. is replete with the AXIA marks is in bad faith since, due to the similarity with the AXA Marks, it leads prospective customers into thinking that the website is an AXA Company site or that the AXA Companies authorize or otherwise sponsor the site or the services offered thereon, which is not true.

70.  Defendants BOK Financial Corporation and AXIA Investment Management, Inc. continue to use the domain name in bad faith in an effort to attract customers that should otherwise be directed to the websites of the AXA Companies.  As such, the AXA Companies are intentionally being denied access to potential Internet customers.

71.  As noted above, the AXA Companies use the domain names www.axa.com, www.axaonline.com,  www.axa-im.com and www.axa-financial.com in promoting financial

services on the web.  The domain name www.axiaim.com used by AXIA Investment Management, Inc. to promote the same or very similar services is likely to be confused by web users in light of the very similar above-noted domain names of the AXA Companies.

72.  As noted above, the AXA Companies have used various marks, including the term "AXA" alone or in combination with other terms, in promoting the same or similar financial services that AXIA Investment Management, Inc. does on its website. The similarity of these respective terms and the identical or very similar services is likely to confuse web users as to the source of the respective services.

73.  Defendants BOK and AXIA Investment Management, Inc., registered the infringing domain name and have used the domain name with the intent to divert consumers away from websites of the AXA Companies, and to a website accessible under the infringing domain name, for these Defendants' commercial gain.  Defendants' aforementioned actions harm the goodwill represented by the AXA Marks by creating a likelihood of confusion as to source, sponsorship, or endorsement of the AXIA Investment Management, Inc., website, or by diluting the AXA Marks.

74.  The foregoing acts of Defendants constitute cybersquatting in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

75.  Upon information and belief, Defendants' foregoing acts have been, and continue to be, willful and deliberate.

76.  The AXA Companies have been and are being irreparably damaged by Defendants' violation of the Anti-Cybersquatting Consumer Protection Act, and they have no adequate remedy at law.  Unless restrained by this Court, Defendants' violation will continue to cause injury to the AXA Companies and to the public.

## COUNT V

### Common Law Trademark Infringement and Unfair Competition

77.  Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs above.

78.  Defendants' use of the AXIA Marks in connection with advertising and sale of financial services, including mutual funds, as described above, is in violation of the

common law, including the common law of New York, because it is likely to confuse customers as to the source of the services, and therefore constitutes common law trademark infringement and unfair competition.

79.  Upon information and belief, Defendants' foregoing acts have been, and continue to be, willful and deliberate.

80.  The AXA Companies have been and are being irreparably damaged by Defendants' violation, and they have no adequate remedy at law.  Unless restrained by this Court, Defendants' violation will continue to cause injury to the AXA Companies and to the public.

## COUNT VI

### State Trademark Infringement

### (N.Y. Arts and Cultural Affairs Law § 33.09)

81.  Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs above.

82.  Defendants' acts of using confusingly similar variations of the AXA Marks with the commercial sale of the same or similar services, as discussed above, without the AXA Companies' consent, knowing the same to be an imitation of the AXA Marks, constitutes a violation of N.Y. Arts and Cultural Affairs Law §§ 33.09(2) and (3).

83.  Upon information and belief, Defendants' foregoing acts have been, and continue to be, willful and deliberate.

84.  The AXA Companies have been and are being irreparably damaged by Defendants' violation, and they have no adequate remedy at law.  Unless restrained by this Court, Defendants' violation will continue to cause injury to the AXA Companies and to the public.

## COUNT VII

### Use of Trade Name with Intent to Deceive

### (N.Y. Gen. Bus. Law § 133)

85.  Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs above.

86.  Defendant AXIA Investment Management, Inc.'s use of the tradename AXIA Investment Management, Inc. constitutes an unfair act by seeking to deceive the public into thinking there is an association or affiliation between this company and the AXA Companies, especially with the trade name of Plaintiff "AXA Investment Managers, Inc.".

87.  AXIA Investment Management Inc.'s misappropriation and infringement of the AXA Marks, including the use of this trade name, constitutes the assumption, adoption or use, with intent to deceive or mislead the public, for advertising purposes or for the purposes of trade of a symbol or simulation thereof or a part of a symbol or simulation thereof, which may deceive or mislead the public into believing that a connection presently exists between AXIA Investment Management, Inc. and the AXA Companies, in violation of N.Y. Gen. Bus. Law § 133.

88.  The AXA Companies have been and are being irreparably damaged by AXIA Investment Management, Inc.'s violation, and they have no adequate remedy at law. Unless restrained by this Court, Defendant's violation will continue to cause injury to the AXA Companies and to the public.

<u>COUNT VIII</u>

<u>Deceptive Acts and Practices/False Advertising</u>
<u>(N.Y. Gen. Bus. Law §§ 349 and 350)</u>

89.  Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs above.

90.  Defendants' use of the AXA Marks in connection with the advertising and sale of financial services, including mutual funds, causes a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, affiliation, connection and association of Defendants' services relative to the AXA Companies' services.

91.  Defendant's misappropriation and infringement of the AXA Marks in the conduct of its business represents a deliberate attempt to deceive and materially mislead consumers into believing that Defendants are in some manner presently affiliated with the

AXA Companies, and that the services offered by Defendants under the AXIA Marks originate from the AXA Companies.

92.  By engaging in such false and misleading advertising, Defendants have engaged in deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349 and false advertising in violation of N.Y. Gen. Bus. Law § 350.

93.  Upon information and belief, Defendants' foregoing acts have been, and continue to be, willful and deliberate.

94.  The AXA Companies have been and are being irreparably damaged by Defendants' violation, and they have no adequate remedy at law.  Unless restrained by this Court, Defendants' violation will continue to cause injury to the AXA Companies and to the public.

COUNT IX

State Trademark Dilution

(N.Y. Gen. Bus. Law § 360-l)

95.  Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs above.

96.  Plaintiffs' AXA Marks constitute famous marks in the State of New York pursuant to New York General Business Law § 360-l, which marks became famous well prior to the relatively recent commencement of Defendants' activities alleged herein.

97.  Defendants' acts constitute use in New York of marks similar to the AXA Marks that is likely to cause injury to the AXA Companies' business reputation and to cause dilution of the distinctive quality of the AXA Marks, which use began after the AXA Marks had become famous.

98.  The foregoing acts of Defendants violate state common law and statutes, including N.Y. Gen. Bus. Law § 360-l.

99.  Upon information and belief, Defendants' foregoing acts have been, and continue to be, willful and deliberate.

100.  The AXA Companies have been and are being irreparably damaged by Defendants' violation, and it they have no adequate remedy at law.  Unless restrained by

this Court, Defendant's violation will continue to cause injury to the AXA Companies and to the public.

*******

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor on all causes of action and grant them the following relief:

A.  Preliminarily and permanently enjoining and restraining Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with them, from using the AXIA Marks, either alone or together, or any other mark, domain name, internet keyword, telephone number, metatag or ticker symbol that is confusingly or deceptively similar, or dilutive, in connection with the offering of financial or similar/related services, from infringement of the above-described U.S. Trademark Registrations, from unfairly competing with Plaintiffs, from engaging in unfair and deceptive trade practices, from injuring Plaintiffs' business reputation, and from diluting Plaintiffs' trademark rights, pursuant to Section 34 of the Lanham Act (15 U.S.C. § 1116), the above-noted sections of the New York statutes, and the equitable power of this Court to enforce the common law of the State of New York.

B.  Requiring Defendants to account for and pay to Plaintiffs the profits derived by Defendants from offering any goods or services bearing the AXIA Marks, and such additional amount as the Court finds to be just, pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law. § 349(h).

C.  Requiring Defendants to pay to Plaintiffs an amount yet to be determined to compensate Plaintiff for all damages sustained as a result of Defendants' unlawful conduct described above, and requiring with respect to damages resulting from infringement and/or from unfair competition of the AXA Marks under the Federal Trademark Act, that such damages be trebled pursuant to 15 U.S.C. § 1117, and further providing that damages awarded under Counts VI, VII, VIII and IX be trebled pursuant to N.Y. Gen. Bus. Law. § 349(h).

D.  Requiring Defendants to pay Plaintiffs punitive damages in such amount as the Court finds appropriate.

E.  Under 15 U.S.C. § 1125(d)(1)(C), forfeiting or canceling the domain name www.axiaim.com, and preferably transferring the domain name to Plaintiffs.

F.   Requiring Defendants to deliver up for impoundment and destruction as the Court directs, pursuant to 15 U.S.C. § 1118, and N.Y. Gen. Bus. Law §§ 133 and 360-l, all goods and materials that include, depict, constitute, or copy the AXA Marks, as well as all computer software, computer hardware, plates, negatives, masters, and any other items used in creating such materials.

G.  Declaring this an exceptional case and awarding Plaintiffs their reasonable attorneys' fees for prosecuting this action, in accordance with 15 U.S.C. § 1117.

H.  Awarding Plaintiffs their attorneys' fees and costs in this action, pursuant to N.Y. Gen. Bus. Law. § 349(h).

I.  Awarding Plaintiffs their costs and expenses incurred in prosecuting this action, expert and professional fees of accountants, economists or survey experts

J.  Requiring payment to Plaintiffs of prejudgment interest on all liquidated sums.

K.  Requiring Defendants to file with the Court and serve on Plaintiffs' counsel a report setting forth the manner and form of their compliance with the Court's orders.

L.  Such other and further relief as the Court may deem just and proper, including that which is provided for in 15 U.S.C. §§ 1116-1118 and 1125, N.Y. Gen. Bus. L. §§ 133, 349, 350, and 360-l, and N.Y. Arts and Cultural Affairs Law § 33.09.

## DEMAND FOR JURY TRIAL

Plaintiffs herein demand a jury trial for all triable issues.

Dated:        September 24, 2007

THELEN REID BROWN RAYSMAN &
STEINER LLP


By:  *s/Catherine McGrath*
       Catherine McGrath
       875 Third Avenue
       New York, New York 10022
       (212) 603-2000

Attorneys for Plaintiffs
AXA, S.A.
AXA Investment Managers, Inc.
AXA Equitable Life Insurance Company,
AXA Advisors, L.L.C.,
AXA Network, L.L.C.,
AXA Financial, Inc.
AXA Private Equity US, L.L.C.